# NO. 12-07-00094-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HOME STATE COUNTY MUTUAL INSURANCE COMPANY, APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *GEORGE HORN, JR., AS ASSIGNEE OF BURRELL ROWE, AS ADMINISTRATOR OF THE ESTATE OF ERIC A. HULETT, DECEASED, APPELLEE* | § | *SABINE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Home State County Mutual Insurance Company appeals the trial court's order granting summary judgment in favor of Appellee George Horn, Jr., as assignee of Burrell Rowe, as administrator of the estate of Eric A. Hulett, deceased. Home State further appeals the trial court's denial of its motions for summary judgment. Home State raises six issues on appeal. We reverse and render.

### BACKGROUND

Horn was severely injured in a single vehicle automobile accident. Horn was the passenger. The driver, Eric Hulett, was killed. Prior to filing suit with regard to the automobile accident, Horn's attorney sent a letter dated June 10, 1999 to Home State, the driver's insurance provider,[1] in which

---

[1] The policy owner was Hulett's sister, Shirley Berry. However, Horn alleged that Hulett was covered by the policy as a permissive driver. Whether Hulett was covered by Berry's insurance policy is not at issue in this appeal.

he offered to settle Horn's claim for policy limits and promised to fully release Home State's insured from all liability and satisfy the hospital lien(s), provided the settlement check was received in his office on or before 5:00 p.m. on June 25, 1999.

Home State investigated the claim and determined that the settlement offer should be accepted. On June 23, 1999, Home State sent a settlement check to Horn's attorney via U.S. mail. However, Horn refused to accept the settlement check, claiming that it was not received by the deadline set forth in the June 10 letter. Horn subsequently caused an administrator to be appointed for Hulett's estate, sued the administrator, and ultimately recovered a judgment for $10,231,844.06.

Two years later, Horn, as assignee of the administrator of Hulett's estate, sued Home State for negligent failure to settle a *Stowers* claim as well as several other claims related to the alleged improper failure to settle Horn's third party insurance claim arising out of the automobile accident. The administrator of Hulett's estate later joined in the suit.

Horn filed a motion for summary judgment, which was initially set for hearing on January 13, 2006. The hearing was continued, and Horn filed another motion for summary judgment pertaining to his *Stowers* cause of action. Home State likewise filed motions for summary judgment, both traditional and no evidence, regarding Horn's *Stowers* claim. On December 8, 2006, the trial court granted summary judgment on Horn's *Stowers* cause of action. On January 18, 2007, the trial court denied Home State's motions for summary judgment. Thereafter, Horn nonsuited his remaining claims, thereby making the trial court's judgment regarding Horn's *Stowers* cause of action final. This appeal followed.

## STANDARD OF REVIEW

When competing motions for summary judgment are filed, and one is granted while the other is denied, we first review the order granting summary judgment. *See Hartford Cas. Ins. Co. v. Morton*, 141 S.W.3d 220, 225 (Tex. App.–Tyler 2004, pet. denied). If we determine the order was erroneous, we review the trial court's action in overruling the denied motion. *Id.* We determine all questions presented, and may reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *See Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). If, however, a genuine fact issue exists, summary judgment for either party is inappropriate, and we reverse and remand. *McCreight v. City of*

2

*Cleburne*, 940 S.W.2d 285, 288 (Tex. App.–Waco 1997, pet. denied).  A fact issue may be created either by disputed or ambiguous facts.  *Id*.

In reviewing a traditional motion for summary judgment, we apply the standards established in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985), which are as follows:

1.  The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2.  In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the [nonmovant] will be taken as true.

3.  Every reasonable inference must be indulged in favor of the [nonmovant] and any doubts resolved in its favor.

*See id.*; *May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.). For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c).  A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim.  *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).  A defendant moving for summary judgment must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense.  *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *see Jones*, 710 S.W.2d at 60.  Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).  We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof.  *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (Tex. 1952).  The only question is whether or not an issue of material fact is presented.  *See* TEX. R. CIV. P. 166a(c).

Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment.  *See, e.g., City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d

671, 678–79 (Tex.1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c).

Furthermore, after adequate time for discovery, a party without presenting summary judgment evidence may also move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The motion must state the elements as to which there is no evidence. *Id.* The court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.* The movant need not produce any proof in support of its no evidence claim. *See id.*; *see also* Judge David Hittner and Lynne Liberato, *Summary Judgments in Texas,* 34 HOUS. L. REV. 1303, 1356 (1998). The motion must be specific in alleging a lack of evidence on an essential element of a cause of action, but need not specifically attack the evidentiary components that may prove an element of the cause of action. *See Denton v. Big Spring Hosp. Corp.*, 998 S.W.2d 294, 298 (Tex. App.–Eastland 1999, no pet.). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 316–17 (Tex. App.–Houston [14th Dist.] 1999, no pet.). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *See Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

### *STOWERS* CAUSE OF ACTION

To prevail on a *Stowers* cause of action, a plaintiff must establish that the insurer was negligent in failing to accept a settlement offer. *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved); *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314 (Tex. 1994). The law is well settled that an insurer has no affirmative

4

duty to make or solicit settlement offers under *Stowers*. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). Rather, the insurer is held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business in determining whether to accept an offer made to it. *See Stowers*, 15 S.W.2d at 547. As a threshold matter, "a settlement demand must propose to release the insured fully in exchange for a stated sum of money." *Trinity Universal Ins. Co. v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998) (citing *Soriano*, 881 S.W.2d at 314); *accord Garcia*, 876 S.W.2d at 848–49. Furthermore, for a settlement demand to activate the insurer's *Stowers* duty, (1) the claim against the insured must be within the scope of coverage, (2) the demand must be within policy limits, and (3) the terms of the demand must be such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *See Garcia*, 876 S.W.2d at 849. In determining whether the claimant's demand was reasonable under the circumstances, along with other factors, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is considered. *Id.* Nevertheless, the ultimate issue remains whether the claimant's demand was reasonable under the circumstances such that an ordinarily prudent insurer would have accepted it. *Id.*

## ADEQUACY OF PROPOSED SETTLEMENT OFFER

In its second issue, Home State argues that the proposed settlement offer by Horn did not create a *Stowers* duty on the part of Home State as to Hulett because the settlement offer sought to release only Horn's claims against Shirley Berry. *See Bleeker*, 966 S.W.2d at 491; *Soriano*, 881 S.W.2d at 314; *Garcia*, 876 S.W.2d at 848–49. Thus, Home State contends that the trial court should have denied Horn's motion for summary judgment and granted Home State's motion for summary judgment because it is entitled to judgment as a matter of law.

We agree that Horn failed to demonstrate he was entitled to summary judgment because no *Stowers* duty was created as to Hulett's estate.[2] Here, Horn relied on the June 10 letter to support the existence of a *Stowers* duty. In the reference line of the letter, Horn defined Berry as Home State's "insured" and Hulett as Home State's "driver." The settlement offer then proposed to "fully

---

[2] The June 10 letter did not offer to release either Hulett or his estate. Throughout the opinion, where feasible, we refer to Horn's failure to release "Hulett's estate" for ease of reference.

release *your insured* from all liability" in exchange for policy limits. (Emphasis added). Thus, by its express language, the June 10 letter proposed to release only Berry, and did not offer to release Hulett's estate.

Horn's *Stowers* claim is not his own, but instead is a claim assigned to him by the administrator of Hulett's estate. In order for Horn, as assignee of Hulett's estate, to have a potential *Stowers* claim, he was required to present evidence of a proposed settlement offer to fully release Hulett's estate. Because Horn's underlying judgment was taken only against the administrator of Hulett's estate, an offer to fully release Berry fails to demonstrate the existence of a *Stowers* duty owed to Horn by Home State. Since there is no evidence of an offer to release Hulett or his estate in the summary judgment record, we hold that Horn failed to demonstrate that Home State owed Hulett's estate a *Stowers* duty and, therefore, was not entitled to summary judgment. In its motion for no evidence summary judgment, Home State asserted that Horn had no evidence to support that Home State owed a *Stowers* duty to Hulett's estate. Since Horn failed to set forth evidence to support that Home State owed Hulett's estate a duty to accept a reasonable settlement offer on its behalf, he did not meet his burden under Texas Rule of Civil Procedure 166a(i). Thus, we hold that Home State was entitled to judgment as a matter of law.

Horn argues that Home State has waived the issue by failing to adequately brief it. *See* TEX. R. APP. P. 38.1(h). Specifically, Horn contends that Home State failed to present authority to support its contention that Horn was required to offer to release Hulett's estate to trigger Home State's *Stowers* duty. However, based on our perusal of Home State's brief, we conclude that Home State provided a clear and concise argument for its contention and made appropriate citations to authorities and to the record. Home State, citing *Bleeker*, 966 S.W.2d at 491, argued that before any duty can arise under *Stowers*, as a "threshold matter 'a settlement demand must propose to release the insured fully in exchange for a stated sum of money.'" Moreover, Home State explained its position that the settlement offer needed to propose a release of Hulett's estate because the underlying judgment was against Hulett's estate. Thus, Home State urged, because Berry had no judgment against her, Berry had no *Stowers* claim, and further, since Horn made no offer to release Hulett's estate, it likewise had no *Stowers* claim. We conclude that Home State fulfilled the requirements of Rule 38.1(h).

Horn further argues that Home State understood the June 10 letter offered a full release of

6

Hulett's estate. Horn also contends that even if the letter did not offer such a release, it was supplemented by oral negotiations that served to offer a full release of Hulett's estate. As support for its contention, Horn directs us to the deposition testimony of Lanny Hutson, an insurance adjuster who was working on Home State's behalf in the handling of Horn's claim. Through his deposition testimony, Hutson acknowledged that he had conversations with Horn's attorney and thought they had a complete settlement for policy limits. Hutson further testified that he believed Horn would provide a full and complete release as to Berry and all other persons from any potential liability from the underlying accident. Yet Hutson's testimony, without more, is not enough to create a *Stowers* duty for Home State. First, Home State had no affirmative duty to make or solicit settlement offers under *Stowers* that would effectuate a full release for Hulett's estate. *Garcia*, 876 S.W.2d at 849. Second, while we agree that a formal demand is not an absolute prerequisite for holding an insurer liable for damages caused by its misconduct other than a *Stowers* breach, there still must exist evidence that the settlement proposed to fully release the proper party. *See id*. at 848–49. Under the facts of the instant case, we conclude that Hutson's references to discussions with Horn's attorney which lacked specificity with regard to both the substance of the conversations and the dates on which such conversations occurred is not sufficient summary judgment proof that Home State was presented with an offer to fully release Hulett's estate. Horn has not cited, nor has our thorough review of the summary judgment record uncovered, any further evidence concerning the substance of these oral negotiations.

Horn next argues that Home State admitted he offered to fully release Hulett's estate by both its actions and those of its attorneys. Horn first notes that Home State attempted to obtain a release of all persons rather than a release of Berry only. Horn further asserts that Home State sought to effectuate a complete settlement of the litigation. However, Horn's proposed release and attempts to completely resolve the litigation have no effect on the proposed offer made in his June 10 letter. Moreover, it is not surprising that Home State would desire a release of all individuals in the event of a settlement. But such an inclination by Home State does not alter the terms of the June 10 letter. Horn further contends that Home State's attorney stated that he expected the trial court to grant Horn's motion for summary judgment if Home State failed to present evidence that Medicare or Medicaid paid for a portion of Horn's treatment prior to the deadline set forth in the June 10 letter. The exchange to which Horn refers transpired as follows:

7

| | |
|---|---|
| The Court: | Let me ask you this. Say there's not a Medicare lien. |
| [Home State's Attorney]: | Right. |
| The Court: | And everything else in some [*Stowers*] case such as this would dictate toward the entry of a judgment based on the [*Stowers*] Doctrine and it goes up on appeal. A judgment is entered and you appeal it. And you say on the appeal because there wasn't evidence produced showing this Medicare lien was being addressed in the demand letter – or whatever you do with it – either paid or taken into account in the demand letter, then that's all that's necessary to defeat a [*Stowers*] Doctrine? How would the Court of Appeals – I mean, they're a State Court too. How do they get evidence that there is a Medicare lien out there? |
| [Home State's Attorney]: | It's the burden of [Home State's attorneys] to present that to this Court. If I don't present it to this Court then I think the Court of Appeals will assume there is none and I have failed in my burden to produce that evidence. |
| The Court: | Assume there is no lien? |
| [Home State's Attorney]: | I think the Court will assume that Mr. Davis' letter was adequate to place my client in a position that it may have liability under the [*Stowers*] Doctrine, unless I am able to show the Court, this Court, that there is in fact a claim by Medicare that makes his letter invalid. |

A party's testimonial declarations that are contrary to his position are quasi-admissions. ***Hennigan v. I.P. Petroleum Co., Inc.***, 858 S.W.2d 371, 372 (Tex. 1993). They are merely some evidence, and they are not conclusive upon the party who made the statement. *See id.* Such statements are to be distinguished from the true judicial admission, which is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Id.* A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. *Id.* The requirements for treating a party's testimonial quasi-admission as a conclusive judicial admission include that the statement be

8

deliberate, clear, and unequivocal and that the hypothesis of mere mistake or slip of the tongue be eliminated. *Id.* Here, the trial court proposed to Home State's attorney a hypothetical scenario in which it was presumed that all factors other than a potential Medicare lien would dictate toward the entry of a judgment based on the *Stowers* doctrine. Home State's attorney responded that unless he was able to show the existence of a Medicare lien, this court would assume on appeal that Horn's letter "was adequate" to place Home State in a position "that it may have liability under the [*Stowers*] doctrine." Home State's attorney never stated that the release offered by Horn was a full release of Hulett's estate. Instead, Home State's attorney simply agreed that if Home State failed to present evidence of a Medicare lien, then it would not be entitled to judgment on that basis. Thus, we conclude that the statement was not a judicial admission, nor was it deliberate, clear, and unequivocal so as to qualify it as a quasi-admission.

Horn further argues that he did not need to offer to release Hulett's estate in order to give rise to Home State's *Stowers* duty. Although his argument is not entirely clear, Horn apparently contends that by offering to release Berry, Horn satisfied the requirement of a settlement offer that proposed to fully release the insured. It is undisputed that Berry was Home State's insured. However, Berry's status as an insured does not change the fact that Horn's judgment is against Hulett's estate rather than Berry. Thus, under the facts at hand, Horn must present evidence of a settlement offer proposing to release Hulett's estate before Home State has any potential liability for an excess judgment against Hulett's estate. *See Soriano*, 881 S.W.2d at 314.

Horn next argues that it was not in his best interest to offer a release that excluded Hulett's estate, but instead greatly served his interest to offer a full release. We agree. Nevertheless, that a course of action was in Horn's best interest is not evidence that he, in fact, followed that course. We are bound by the record. And the only summary judgment evidence regarding the proposed settlement offer made by Horn established that he did not offer a full release of Hulett's estate.

Finally, Horn argues that even if his common law *Stowers* claim fails, he should be entitled to assert a "statutory *Stowers*" claim. *See* TEX. INS. CODE ANN. § 541.060 (Vernon Supp. 2007). However, Horn's motion for summary judgment was based solely on breach of the common law *Stowers* claim. Because all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court, a potential claim under a "statutory *Stowers*" theory does not assist Horn with respect to his motion that is the subject of this appeal.

9

*See* TEX. R. CIV. P. 166a(c).  Further, Horn nonsuited all claims other than his common law *Stowers* claim.  Thus, the only claim left for this court to determine is Horn's common law *Stowers* claim.

In sum, to establish that Home State owed him, as Hulett's estate's assignee, a *Stowers* duty, he was required to provide summary judgment evidence of, among other things, a settlement offer proposing to fully released Hulett's estate.  Horn has not met this burden.  Therefore, we hold that (1) the trial court erred in granting summary judgment in Horn's favor on his *Stowers* cause of action, (2) the trial court erred in denying Home State's no evidence motion for summary judgment pertaining to Horn's *Stowers* cause of action, and (3) Home State is entitled to judgment as a matter of law.  Home State's second issue is sustained.[3]

## DISPOSITION

Having sustained Home State's second issue, we *reverse* the trial court's judgment and *render* judgment that Horn take nothing.

                                                           **BRIAN HOYLE**
                                                                     Justice

Opinion delivered June 25, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[3] Inasmuch as Home State's second issue is dispositive of this appeal, we do not reach Home State's remaining issues.  *See* TEX. R. APP. P. 47.1.

10